UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


**STEPHANIE R. JORDAN SMITH,**

    **Plaintiff,**

    v.

                        Civil Action 2:18-cv-286
                        Judge Algenon L. Marbley
                        Magistrate Judge Chelsey M. Vascura

**COMMISSIONER OF SOCIAL SECURITY,**

    **Defendant.**


## REPORT AND RECOMMENDATION

Plaintiff, Stephanie R. Jordan Smith ("Plaintiff"), brings this action under 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for a period of disability, disability insurance benefits, and supplemental security income. This matter is before the undersigned for a Report and Recommendation on Plaintiff's Statement of Errors (ECF No. 14), the Commissioner's Response in Opposition (ECF No. 19), and the administrative record (ECF No. 11). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED** and that the Commissioner's decision be **AFFIRMED**.

### I.     BACKGROUND

Plaintiff protectively filed her applications for a period of disability, disability insurance benefits, and supplemental security income on September 13, 2013. In her applications, Plaintiff alleged a disability onset of March 1, 2012. Plaintiff's applications were denied

initially on May 14, 2014, and upon reconsideration on October 31, 2014. Plaintiff sought a hearing before an administrative law judge. Administrative Law Judge Thomas L. Wang (the "ALJ") held a hearing on January 6, 2017, at which Plaintiff, represented by counsel, appeared and testified. Vocational Expert Carl W. Hartung (the "VE"), also appeared and testified at the hearing. On March 22, 2017, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Social Security Act. On January 30, 2018, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. Plaintiff then timely commenced the instant action.

## II. HEARING TESTIMONY

At the hearing, Plaintiff testified that she is disabled due to headaches resulting in "terrible pain." (R. at 48-49.) She further testified that she has blackouts in her eyesight, pressure in her head, memory problems, cognitive decline, shoulder pain, allergies, sleep apnea, and neck pain. (R. at 49, 55-57, 61.) Plaintiff estimated that she gets pressure headaches "maybe two, maybe three times a week." (R. at 60.) Plaintiff explained that, when she has a headache, she usually sits with an ice pack on her head unless she has physical therapy. (R. at 62.) Plaintiff testified that she had a shunt put in her head in February 2016, and that since then, she has "[her] good times and [her] bad times." (R. at 63.) She thinks the shunt "drains [her] better than all the medication. . ." (*Id.*) Plaintiff testified that she has complied with her doctor's recommendations regarding her headaches and that she has a home health aide at her doctor's suggestion. (R. at 63-64.)

Regarding activities of daily living, Plaintiff testified that her mother helps her care for her daughter and with cooking. (R. at 65.) She testified that she is able to drive, but her

2

parents "really don't like [her] to drive," so her mom takes her daughter to her dance lessons. (R. at 65.) Plaintiff testified that she "tr[ies] to do laundry and stuff." (*Id.*)

The VE also testified at the hearing. The ALJ asked the VE a series of hypothetical questions for the purpose of determining whether Plaintiff can perform past work and/or other work in the regional and national economy. (R. at 66-70.) The ALJ first asked the VE as follows:

> Q: Assume a hypothetical individual with the claimant's age, education, and past job.
>
> Hypothetical No. 1: Light work as defined by the regulations; push or pull is limited as per exertional weight limits; no commercial driving; no inspection work; overhead reaching is limited to the frequent level; forward and laterally is unlimited; occasional exposure to loud noise, as defined by the SCO as code 4; occasional exposure to irritants, such as fumes, odors, dusts, and gases; no use of hazardous machinery; no exposure to unprotected heights; goal-based production work measured by end result, not pace work; work that's limited to simple, routine, and repetitive tasks; work allowed off task 5 percent of the day; work in a low stress job, defined as only occasional changes in the work setting. Interaction with the public, coworkers, and supervisors is limited to the occasional level. Avoiding exposure to extreme bright lighting, like stage lighting, headlights, bright inspection lights; normal office and home lighting is acceptable.
>
> Can the hypothetical individual perform the past job?
>
> A: No, Judge, they cannot.
>
> Q: Can the hypothetical individual perform any other work?
>
> A: Judge, there are other jobs that would meet the parameters of the hypothetical. . . .

(R. at 67-68.) The VE testified that Plaintiff can perform the job of marker, routing clerk, and housekeeping cleaner. (R. at 68-69.) The ALJ subsequently asked the VE the following hypothetical question:

3

Q: If I were to take Hypothetical No. 1 base and state that the hypothetical individual would be able to work within a 5 percent off-task component and would not need the additional breaks but that she would eventually pay for that and she would require two absences every month on a consistent basis after having worked for that month.

Would that limitation render – added to Hypothetical 1, render Hypothetical 1 work preclusive?

A: Yes, Judge. For unskilled work, I believe that's accurate.

(R. at 70.)

### III. THE ADMINISTRATIVE DECISION

On March 22, 2017, the ALJ issued his decision. (R. at 15-35.) The ALJ first found that Plaintiff meets the insured status requirements through December 31, 2017. (*Id*. at 18.) At step one of the sequential evaluation process,[1] the ALJ found that Plaintiff had not engaged in

---

1. Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence. *See* 20 C.F.R. § 416.920(a)(4). Although a dispositive finding at any step terminates the ALJ's review, see *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

   1. Is the claimant engaged in substantial gainful activity?

   2. Does the claimant suffer from one or more severe impairments?

   3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

   4. Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

   5. Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); see also *Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

substantial gainful activity since March 1, 2012, the alleged onset date. (*Id.*) At step two, the ALJ found that Plaintiff had the severe impairments of "idiopathic intracranial hypertension; migraine headaches; nuclear sclerosis of the eyes; allergic rhinitis; RC tear; morbid obesity; an adjustment disorder with mixed depression and anxiety; and borderline intellectual functioning." (*Id.*) He further found that Plaintiff had the non-severe impairments of obstructive sleep apnea and gastroesophageal reflux disease. (*Id.*) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 18-19.) At step four of the sequential process, the ALJ set forth Plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except pushing/pulling is limited as per the exertional weight limits. She would be precluded from engaging in commercial driving and precluded from engaging in inspection work. The claimant could frequently reach overhead, but would be unlimited in forward and lateral reaching. She could have occasional exposure to loud noise, defined by the SCO as code 4. She could have occasional exposure to irritants, such as fumes, odors, dusts, and gases. She would be precluded from the use of hazardous machinery and precluded from exposure to unprotected heights. The claimant would require goal based production, where work is measure[d] by the end result, not pace work. She could perform simple, routine, repetitive tasks and work allowed off task would be five (5) percent of the day. She would require a low stress job, defined as only occasional changes in the work setting. She could have occasional interaction with the public, coworkers, and supervisors. The claimant should avoid exposure to extreme bright lighting, such as stage lighting, headlights, and bright inspection lighting, but exposure to normal office/home lighting is acceptable.

(R. at 22.) In calculating Plaintiff's RFC, the ALJ considered Plaintiff's credibility and found that her allegations regarding her symptoms and limitations were not generally supported by the objective evidence in the record. (R. at 31.)

5

Relying on the VE's testimony, the ALJ found that even though Plaintiff is unable to perform her past work, she can perform jobs that exist in significant numbers in the national economy. (R. at 33-34.) He therefore concluded that Plaintiff was not disabled under the Social Security Act. (R. at 35.)

In her Statement of Errors, Plaintiff contends that the ALJ's decision is not supported by substantial evidence for two reasons. First, she contends that the ALJ erred in his credibility analysis. Second, Plaintiff asserts that the ALJ improperly relied upon the VE's testimony at step five because it was based on a hypothetical question that was "incomplete and inaccurate."

## IV. STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). Under this standard, "substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V. ANALYSIS

As set forth above, Plaintiff raises two issues in her Statement of Errors (ECF No. 14). First, she asserts that the ALJ erred in analyzing her credibility. Second, she posits that the ALJ's decision is not supported by substantial evidence because the hypothetical question posed to the VE was inaccurate and incomplete. The undersigned considers each contention of error in turn.

### A. The ALJ's Credibility Determination

Plaintiff first asserts that the ALJ erred in evaluating her credibility. (Pl.'s Statement of Errors at 8, ECF No. 14.) Within this contention of error, Plaintiff alleges that the reasons the ALJ provides for discounting her credibility are invalid or are not supported by substantial evidence. The Commissioner counters that the ALJ appropriately evaluated Plaintiff's allegations in light of the rules and regulations and substantial evidence supports the ALJ's

credibility findings. (Def.'s Mem. in Opp. at 14, ECF No. 19.) The undersigned agrees with the Commissioner and finds Plaintiff's first contention of error to be without merit.

For decisions rendered on or after March 28, 2016, the ALJ will evaluate a claimant's statements concerning the intensity, persistence, and limiting effects of symptoms of an alleged disability under SSR 16-3p. SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). SSR 16-3p superseded SSR 96-7p, 1996 WL 374186 (July 2, 1996), which required the ALJ to evaluate the overall credibility of a plaintiff's statements. In contrast, SSR 16-3p requires the ALJ to evaluate the *consistency* of a plaintiff's statements, without reaching the question of overall *credibility*, or character for truthfulness. *See id.* at *11 ("In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person."). Although SSR 16-3p supersedes SSR 96-7p, "according to the very language of SSR 16-3p, its purpose is to 'clarify' the rules concerning subjective symptom evaluation and not to substantially *change* them." *Brothers v. Berryhill*, No. 5:16-cv-01942, 2017 WL 2912535, at *10 (N.D. Ohio June 22, 2017). The rules were clarified primarily to account for the difference between a credibility determination, which necessarily impacts the entirety of a claimant's subjective testimony, and a consistency determination, which applies only to specific statements regarding symptoms. *See* SSR 16-3p at *2. It follows, therefore, that the procedures for reviewing an ALJ's credibility assessment under SSR 16-3p are substantially the same as the procedures under SSR 96-7p. Accordingly, the undersigned concludes that existing case law controls to the extent it is consistent with the clarification of the rules embodied in SSR 16-3p's

8

clarification.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

The ALJ's credibility determination "with respect to [a claimant's] subjective complaints of pain" is generally given deference. *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir. 1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review."). In addition, the Regulations list a variety of factors an ALJ must consider in

9

evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication. 20 C.F.R. § 404.1529(c)(3); SSR 16–3p; *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011), *adopted*, 2011 WL 3843703 (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision).

Here, the ALJ's analysis supplies substantial evidence supporting his credibility finding and properly considers the requisite factors in evaluating Plaintiff's subjective statements. The ALJ thoroughly discussed the record evidence and concluded that it did not support Plaintiff's subjective complaints, explaining as follows:

> The claimant does have underlying medically determinable impairments that could reasonably cause some symptomatology. However, the pivotal question is not whether such symptoms exist, but whether those symptoms occur with such frequency, duration, or severity as to reduce the claimant's residual functional capacity as set forth above or to preclude all work activity on a continuing and regular basis. In this case, a careful review of the record does not document sufficient objective medical evidence to substantiate the severity of the pain and degree of functional limitation alleged by the claimant. The objective evidence fails to document the presence of any impairment or combination of impairments that could reasonably be expected to result in pain or other symptoms of such a severity or frequency as to preclude the functional abilities described above. Rather, the factors set forth in 20 CFR 404.1529(c) and 20 CFR 416.929(c) support the residual functional capacity as assessed.
>
> With respect to the nature of the claimant's symptoms, precipitating and aggravating factors, the medications taken and any side effects, and other measures used to relieve the symptoms, the claimant reported some memory loss and confusion as a result of her prescribed medications. While she testified to such side effects, and how much she had lost mentally, the record was devoid of routine or consistent reports of such significant side effects to her treating medical providers.
>
> In addition to the general lack of objective evidence, the evidence of record does not support her subjective complaints. The claimant testified and the record documented that despite filing for disability she intended to return to work. Her intention to return to work suggests she believed she remained able to engage in

work related activities. The belief one is able to engage in work related activities is inherently inconsistent with the filing of disability, asserting one is unable to work.

The claimant's daily activities are not restricted to the extent that she would be precluded from the range of work assessed herein. The claimant testified that she lived at home with her family, including her mother. The record documented while she testified she used the assistance of doctor *suggested*, but not prescribed home health care, she reported she remained able to drive a motor vehicle and transport her daughter to school (Exhibit 20F/3). She was able to perform household chores, including cleaning and washing laundry (Exhibit 20F/3). The claimant indicated that she shared responsibilities of cleaning, cooking, and shopping with her mother (Exhibit 20F/3). She admitted at times she would help her husband with his work (Exhibit 20F/3). She stated that she enjoys attending her daughter's games and activities, as well as staying in touch with her friends and family (Exhibit 20F/3). The claimant admitted she remains able to use the computer and enjoys watching television (Exhibit 20F/3).

The record contains inconsistent statements. The claimant reported she was in significant pain; however, the record noted she was observed to be in no apparent or acute distress on multiple occasions (Exhibits 6F/11; 9F/3, 8; 21F/12). The claimant endorsed she was depressed; however, she did not seek routine or consistent mental health treatment with any licensed mental health specialist or counselor, but rather received no more than conservative medication management from her general practitioner. The claimant reported memory deficits; however, she continued to be her head of household and was able to provide care for herself and for her daughter. She was able to operate a motor vehicle and navigate through her community, taking her daughter to school and sharing the responsibility of going shopping with her mother. While she reported that she used a home health care aide, there was nothing in the record to suggest the home health care aide was medically necessary or prescribed by any treating medical source. The claimant reported 2-3 headaches per week; however, post shunt placement, the record does not objectively support the severity, intensity, or persistence of the claimant's subjectively reported headaches, nor does the record objectively support the frequency of her head pain. The claimant did not submit any headache log or journal post shunting nor does the emergency treatment record support the claimant experienced intractable migraines 2-3 times per week post shunt placement in March 2015. While the claimant reports back pain and states she is unable to stand for long periods of time, the record is devoid of any specific treatment for her back, such as physical therapy for the spine or spinal injections. The claimant reported she needed surgery on the left shoulder. The record documents the claimant reported left shoulder pain as a result of her inability to use her right shoulder all of the time; however, the record was devoid of any medical need for left shoulder surgery or suggested left shoulder surgical intervention. The claimant testified at

the hearing that she thinks she ran herself over at the Sonic drive in due to a seizure; however, the record does not objectively document any receive [sic] seizure related activities. Further, EEG testing in the record was unremarkable.

The record also documents non-compliance. The claimant stopped taking her prescribed headache medication for a period of time due to a lack of insurance coverage (Exhibit 4F/1). The undersigned considered this lack of insurance coverage when assessing her non-compliance. The claimant reportedly was not using her prescribed CPAP as directed (Exhibit 4F/2; 8F/13). The record noted the claimant had indicated she was using her medications as needed rather than as directed/prescribed by her treating physician (Exhibit 2F/40). The claimant no showed for a scheduled appointment, suggesting her alleged symptoms were not as severe as she reported (Exhibit 4F/45). The claimant stopped attending her treatment sessions for her vision (Exhibit 10F/4). The claimant was discharged from one physician for no showing to too many of her appointment sessions (Exhibit 14F/50). The claimant reported inconsistency with her home exercise programs (Exhibit 27F/4). The claimant did not attend an appointment for a prescribed TENS unit despite her reporting continued right shoulder pain (Exhibit 27F/12). The claimant no showed to her scheduled treatment session, suggesting her reported symptoms were not as severe as she had alleged (Exhibit 34F/1). Despite reporting limited range of motion in her shoulder and some reduced strength, the claimant stopped attending physical therapy and was discharged due to her lack of follow up treatment (Exhibit 27F/4).

Although the information provided by the claimant may not be the result of a conscious intention to mislead, nevertheless such statements suggest that the information provided by the claimant is not generally supported by the objective evidentiary record.

(R. at 29-31.)

Substantial evidence supports the ALJ's credibility findings. First, the ALJ reasonably discounted Plaintiff's allegations on the grounds that the objective evidence did not support her subjective complaints. *See* 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms); *Long v. Comm'r of Soc. Sec.*, 56 F. App'x 213, 214 (6th Cir. 2003) (holding that plaintiff "did not introduce sufficient objective evidence to support the existence or severity of her allegedly disabling headaches"); *Donerson v. Comm'r of Soc. Sec.*, No. 1:16 CV 3028, 2017 WL 6987958, at *7 (N.D. Ohio Dec.

28, 2017) (finding that "the ALJ did not err in relying on the lack of objective evidence as one factor in discounting Plaintiff's credibility regarding the limiting effects of her migraines."). Thus, the ALJ reasonably considered that objective testing revealed a normal EEG showing no seizure related activity or brain abnormalities; a normal EKG; a normal MRI of the brain; and no evidence of any acute brain parenchymal abnormality. (R. at 25 (citing R. at 825, 1173, and 1248).) The ALJ also reasonably considered that treating physician Dr. McGregor noted that Plaintiff's symptoms had been stable for the last two years; were intermittent, episodic, and mild-to-moderate in severity; and that she was "relatively symptom free at th[e] time." (R. at 25, 1404, 1408, 1413.) And contrary to Plaintiff's contention, the ALJ reasonably considered that Plaintiff appeared in no acute distress during examinations. (R. at 24 (citing R. at 576)); (R. at 30 (citing R. at 402, 509, 514, 772)). *See Ison v. Acting Comm'r of Soc. Sec.*, No. 2:16-CV-00464, 2017 WL 4124586, at *10 (S.D. Ohio Sept. 18, 2017) (finding the ALJ properly supported his credibility assessment by, *inter alia*, "extensively review[ing] the medical opinions of the state agency medical examiners and treating physicians which did not contain evidence that the plaintiff was in acute distress such that her headaches would be disabling"); *Arnwine v. Comm'r of Soc. Sec.*, No. 1:12 CV 1483, 2013 WL 3365137, at *10 (N.D. Ohio July 3, 2013) (upholding credibility assessment where ALJ found, among other things, that plaintiff frequently appeared in no acute distress).

The ALJ likewise reasonably considered the effectiveness of treatment and Plaintiff's compliance with prescribed treatment. *See* 20 C.F.R. § 404.1529(c)(3)(v). *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the

individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same). The ALJ considered that Plaintiff's headaches were responsive to medication (R. at 25, 1061), and that Plaintiff "saw improvement in headaches from her prescribed medications, as well as changes in her diet, including reducing her gluten intake" (R. at 24; 1481-82). The ALJ also found that Plaintiff reported improvement following her shunt surgery, (R. at 26, 1334; *see also* R. at 63, 1267, 1275, and 1338), and "admitted her symptoms were worse when she was not compliant with both medications as prescribed" (R. at 25, 1309). Thus, it was also reasonable for the ALJ to discount Plaintiff's credibility based on her lack of compliance with prescribed treatment.

According to Plaintiff, however, the ALJ failed to appropriately consider her lack of insurance in assessing her failure to comply with treatment plans. This Court has explained that

> Under SSR 96-7p, a claimant's statements "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure." SSR 96-7p, 1996 WL 374186, at *7. However, an ALJ cannot discount a claimant's credibility in this regard "without first considering any explanations that the individual may provide, or other information in the case record, that may explain" the type or frequency of treatment actually received. *Id.* Such reasons may include the plaintiff's inability "to afford treatment" or lack of "access to free or low-cost medical services." *Id.* at *8.

*Collins v. Comm'r of Soc. Sec.*, No. 3:16-CV-356, 2017 WL 3124158, at *5 (S.D. Ohio July 24, 2017). Here, the ALJ appropriately considered Plaintiff's lack of insurance when assessing her noncompliance. (R. at 30 (finding that Plaintiff stopped taking her prescribed headache medication for a period of time due to lack of insurance and noting that the ALJ considered Plaintiff's lack of insurance in assessing her credibility).) Further, the ALJ considered

14

numerous instances of non-compliance that were unrelated to Plaintiff's lack of insurance. The ALJ considered that Plaintiff failed to use her prescribed CPAP as directed; indicated she was using medications as needed rather than as prescribed by her doctors; failed to attend several appointments; reported inconsistency with her home exercise programs; failed to attend an appointment to receive a TENS unit for reported shoulder pain; and stopped attending physical therapy. (R. at 331-32, 376, 381, 483, 519, 583, 922, 930, and 1205.) The undersigned finds no error in the ALJ's consideration of Plaintiff's non-compliance with prescribed treatment.

Plaintiff's contention that the ALJ improperly discredited her allegations based on her record of conservative treatment for depression is likewise without merit. (Pl.'s Statement of Errors at 10-11, ECF No. 14.) Although Plaintiff did not allege she was disabled due to depression alone, she alleged that she suffered from depression and that it limited her ability to work. (R. at 101-02.) Under such circumstances, the ALJ reasonably considered Plaintiff's failure to seek routine or consistent mental health treatment in assessing her credibility. *See* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017) (in assessing credibility, the adjudicator must consider, among other factors, "[t]he type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" and "[t]reatment, other than medication, the individual receives or has received"); 20 C.F.R. § 404.1529(c)(3) (same).

The undersigned is also not persuaded that the ALJ mischaracterized or failed to address certain evidence related to her activities of daily living. (Pl.'s Statement of Errors at 9, ECF No. 14.) As a preliminary matter, the ALJ is not required to "discuss every piece of evidence in the record to substantiate [his] decision." *Conner v. Comm'r of Soc. Sec.*, 658 F. App'x 248, 254

(6th Cir. 2016) (citing *Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004)). Further, an allegation of "cherry picking" "is seldom successful because crediting it would require a court to re-weigh record evidence." *DeLong v. Comm'r of Soc. Sec. Admin.*, 748 F.3d 723, 726 (6th Cir. 2014). Here, contrary to Plaintiff's assertion, the ALJ considered Plaintiff's testimony that she has a home health care aide and relies on her mother for assistance. (R. at 23, 30.) Furthermore, review of the hearing transcript reveals that Plaintiff testified that she can no longer coach and participate in her children's sports, not that she can no longer attend her daughter's games and activities. (*Compare* R. at 756 *to* R. at 57.) As demonstrated above, the ALJ reasonably considered the record as a whole and properly discounted Plaintiff's credibility based on her activities of daily living. (R. at 29-31.) *See* 20 C.F.R. § 404.1529(c)(3)(i) (daily activities may be useful to assess nature and severity of claimant's symptoms); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004) ("The administrative law judge justifiably considered [the claimant's] ability to conduct daily life activities in the face of his claim of disabling pain.").

Finally, the ALJ did not err in considering Plaintiff's desire to return to work in assessing her credibility. *See Hickey v. Colvin*, No. 3:14CV00264, 2015 WL 4575179, at *7 (S.D. Ohio July 29, 2015) (upholding credibility assessment based, in part, on plaintiff's expressed a desire to return to work or school). Although not dispositive, Plaintiff's desire to return to work bears on her credibility because it conflicts with her claim that she is disabled. Even without this reason for discounting Plaintiff's credibility, however, substantial evidence supports the ALJ's credibility assessment. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (explaining that "[a]s long as the ALJ cited substantial, legitimate evidence to support his factual

16

conclusions, [the Court] are not to second-guess. . .").

In summary, the undersigned finds that the ALJ properly evaluated Plaintiff's allegations regarding her symptoms and that substantial evidence supports the ALJ's credibility assessment. Although substantial evidence may also support an alternative finding, the ALJ's findings were within the ALJ's permissible "zone of choice" and the Court will not re-weigh the evidence. *See Blakley*, 581 F.3d at 406. Accordingly, it is **RECOMMENDED** that Plaintiff's first contention of error be **OVERRULED**.

**B.     The ALJ's Step Five Finding**

Plaintiff asserts that the ALJ's step five finding is not supported by substantial evidence because the hypothetical question posed to the VE was inaccurate and incomplete. More specifically, Plaintiff asserts that the ALJ should have adopted a limitation that "Plaintiff will miss work two days a month, on a consistent basis, due to migraine headaches." (Pl.'s Statement of Errors at 14-15, ECF No. 14.) Plaintiff contends that the omission of this limitation constitutes reversible error because the VE testified that no work would be available for an individual with Plaintiff's age, education, work experience, and RFC if he/she missed two days of work per month on a consistent basis. (*Id.*) The Commissioner counters that the ALJ appropriately omitted this limitation from Plaintiff's RFC as no medical source opined that Plaintiff would miss two days of work per month, and Plaintiff failed to point to any medical evidence supporting inclusion of the limitation. (Def.'s Mem. in Opp at 20, ECF No. 19.) The undersigned agrees with the Commissioner and finds Plaintiff's second contention of error to be without merit.

The Sixth Circuit has "held repeatedly that the testimony of a vocational expert

17

identifying specific jobs available in the regional economy that an individual with the claimant's limitation can perform can constitute substantial evidence supporting an ALJ's finding at step 5 that the claimant can perform other work.'" *Staymate v. Comm'r of Soc. Sec.*, 681 F. App'x 462, 469 (6th Cir. 2017) (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 549 (6th Cir. 2004) (citations omitted)). "In order for a vocational expert's testimony in response to a hypothetical question to serve as substantial evidence in support of the conclusion that a claimant can perform other work, the question must accurately portray a claimant's physical and mental impairments." *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010). "[I]n formulating a hypothetical question, an ALJ is only required to incorporate those limitations which he has deemed credible." *See Gant v. Comm'r of Soc. Sec.*, 372 F. App'x 582, 585 (6th Cir. 2010) (citations omitted); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."); *Infantado v. Astrue*, 263 F. App'x 469, 477 (6th Cir. 2008) (holding that the failure to incorporate limitations into the hypothetical question that the court gave no weight was not in error).

Here, the ALJ incorporated the limitations that he found to be credible and supported by the record evidence in the hypothetical question to the VE. Plaintiff contends that the ALJ should have incorporated a limitation into the hypothetical question that provided she would miss two days of work per month on a consistent basis. Plaintiff, however, fails to point to any evidence in the record that supports such a limitation. No medical source opined that Plaintiff would miss two days of work per month. Further, as set forth above, substantial evidence

supports the ALJ's conclusion that the record evidence does not support Plaintiff's allegations regarding the severity, intensity, persistence, or frequency of her headaches and instead "supports no more than intermittent episodic headaches that are generally controlled with prescribed treatment." (R. at 30, 25). Accordingly, the ALJ reasonably omitted a limitation for Plaintiff missing two days of work per month, and the hypothetical to the VE was proper and serves as substantial evidence that Plaintiff can perform work in the national economy. *Ealy*, 594 F.3d at 516. The undersigned therefore finds Plaintiff's second contention of error to be without merit. It is therefore **RECOMMENDED** that Plaintiff's second contention of error be **OVERRULED**.

## VI. DISPOSITION

From a review of the record as a whole, the undersigned concludes that substantial evidence supports the ALJ's decision denying benefits. Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A Judge of this Court shall make a *de novo* determination of those portions of the Report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further

evidence or may recommit this matter to the Magistrate Judge with instructions.   28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the District Judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation.   *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

     /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE